[761 NYS2d 255]

In the Matter of ANDREW J. NATALE (Admitted as ANDREW J. NATALE, JR.), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, June 2, 2003

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Forrest Strauss* of counsel), for petitioner.

*Richard Grayson,* White Plains, for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition containing 20 charges of professional misconduct. Charge 10 was amended, and Charge 16 was withdrawn. In his answer, the respondent admitted in part, and denied in part, the factual allegations contained in the petition. At a hearing, the petitioner's case consisted of 34 exhibits and the testimony of six witnesses. The respondent produced five witnesses and 13 exhibits, and testified on his own behalf. At the conclusion of the hearing, the Special Referee sustained Charges 1, 2, 3, 6, 7, 8, and 17 through 20, and did not sustain the remaining charges. The petitioner now moves to confirm the report of the Special Referee insofar as it sustains the aforementioned charges and to disaffirm it insofar as it did not sustain Charges 4, 5, and 9 through 15. The respondent cross-moves to confirm the report of the Special Referee insofar as it did not sustain Charges 4, 5, and 9 through 15, to disaffirm it insofar as it sustained the remaining charges, and to refer the matter back to the petitioner for whatever action it deems appropriate. We find that all of the charges should be sustained except Charge 1.

Charge 2 alleged that the respondent failed to ensure the integrity of third-party funds entrusted to him incident to his practice of law and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (b) (1) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [b] [1]; 1200.3 [a] [7]), by failing to timely deposit into a duly-constituted special account escrow funds received incident to his practice of law.

On October 19, 1994, Mr. and Mrs. Stephen Muoio closed title on their purchase of a residence constructed for them by JLM Land Development (hereinafter JLM). The respondent agreed to hold in escrow $2,500 of the sale's proceeds pending JLM's completion of construction items on a punch list that the Muoios had prepared. Although the respondent received the $2,500, he failed to deposit it into a duly-constituted attorney special account.

Charge 3 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in viola-

tion of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

At some point after the JLM-to-Muoio title closing, the respondent released the $2,500 cash escrow to JLM without obtaining proper confirmation of his authority to release it and/or without notifying the Muoios or their attorney that the escrow was being released.

Charge 4 alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation and/or conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and/or (7) (22 NYCRR 1200.3 [a] [4], [7]), by making material misrepresentations to an attorney for the petitioner during its investigation.

In March 1997 the Muoios filed a complaint against the respondent with the petitioner. During the course of its investigation, the respondent answered a November 12, 1999, request for additional information from the petitioner with a letter dated November 30, 1999, to which he annexed, inter alia, two general releases from the Muoios in favor of his law firm and him individually. In his letter to the petitioner dated November 30, 1999, the respondent represented that the releases were unsolicited and had just been obtained at the behest of the Muoios' attorney. In fact, they had been obtained more than two years earlier when a breach of warranty action by the Muoios based on the aforementioned events was settled.

Charge 5 alleged that, based on the factual allegations contained in Charge 4, the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by making material misrepresentations to an attorney for the petitioner Grievance Committee during its investigation.

Charge 6 alleged that the respondent failed to ensure the integrity of third-party funds entrusted to him incident to his practice of law and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (b) (1) (22 NYCRR 1200.46 [b] [1]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.24 [d]; 1200.3 [a] [7]), by failing to timely deposit into a duly-constituted special account escrow funds received incident to his practice of law.

On August 26, 1994, Ronald Klein and Laurie Klein closed title on their purchase of a residence constructed for them by JLM. The respondent represented JLM at the closing and

agreed to hold in escrow $1,500 of the proceeds of the sale pending JLM's completion of construction items on a punch list that the Kleins had prepared. Although the respondent received a $1,500 check from the Klein's attorney at the closing, he failed to deposit the check into a duly-constituted attorney special account until September 19, 1994.

Charge 7 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by improperly releasing escrowed funds.

On September 19, 1994, the respondent disbursed the $1,500 Klein escrow to JLM without obtaining proper confirmation of his authority to release the funds and/or without notifying the Kleins or their attorney that the escrow was being released.

Charge 8 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to reveal to the purchasers his financial and personal interest in the selling entity he was representing in a real estate transaction.

The respondent failed to disclose his financial, business, property, or personal interest in JLM to the Kleins or their attorney at any time prior to the completion of the title closing in the JLM-to-Klein transaction.

Charge 9 alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation and/or conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and/or (7) (22 NYCRR 1200.3 [a] [4], [7]), by making material misrepresentations to an attorney for the Grievance Committee during its investigation.

In July 1997 the Kleins filed a complaint against the respondent with the petitioner. In his written answer to the Klein complaint dated July 22, 1997, the respondent represented to the Committee that the $1,500 escrow remained on deposit in his attorney escrow account and that no demand for it had been made by the Kleins. In actuality, he released the Klein escrow on September 19, 1994.

Charge 10, as amended, alleged that, based on the factual allegations contained in Charges 6, 7, and 9, the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a)

(5) (22 NYCRR 1200.3 [a] [5]), by making material misrepresentations to an attorney for the Grievance Committee during its investigation.

Charge 11 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to maintain a sufficient balance in his attorney trust account.

The respondent was a duly-authorized signatory and the primary operator of an attorney escrow account at the Hudson Valley National Bank during the period from July 31, 1994, through July 30, 1997. Beginning on July 27, 1995, and continuing until August 1, 1995, the balance in that account was a negative number.

Charge 12 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to maintain a sufficient balance in his attorney trust account.

On February 28, 1996, the balance in the respondent's attorney trust account at Hudson Valley National Bank was a negative number.

Charge 13 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from his attorney trust account.

Between December 8, 1994, and June 4, 1996, the respondent used his attorney trust account at Hudson Valley National Bank to receive and/or disburse funds obtained incident to his practice of law in the Agro matter. On January 18, 1995, the amount on deposit and available for disbursement in that matter was zero. On the same date, check number 1189 in the amount of $25,000 payable to Joseph Conveddu cleared the account. No corresponding deposit of funds for the Argo matter was made until January 19, 1995.

Charge 14 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from his attorney trust account.

Between July 27, 1995, and August 1, 1995, the respondent used his attorney trust account at Hudson Valley National Bank to receive and/or disburse funds obtained incident to his

practice of law in the Cozza matter. On July 27, 1995, check number 1211 in the amount of $31,500 payable to JLM Land Development was disbursed in connection with the Cozza matter. No corresponding deposit of funds for the Cozza matter was made until August 1, 1995.

Charge 15 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from his attorney trust account.

Between September 12, 1994, and September 19, 1994, the respondent used his attorney trust account at Hudson Valley National Bank to receive and/or disburse funds obtained incident to his practice of law in the King Lumber matter. On September 12, 1994, check number 1158 in the amount of $2,750, payable to Davis and Singer, PC, was disbursed in connection with the King Lumber matter. No corresponding deposit of funds for the King Lumber matter was made until September 19, 1994.

Charge 17 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from his attorney trust account.

Between November 16, 1994, and November 25, 1994, the respondent used his attorney trust account at Hudson Valley National Bank to receive and/or disburse funds obtained incident to his practice of law in the Highland matter. During that period, the amount disbursed from that account in connection with the Highland matter exceeded the amount deposited therein for that matter.

Charge 18 alleged that the respondent commingled funds and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (a) and/or DR 1-102 (a) (7) (22 NYCRR 1200.46 [a]; 1200.3 [a] [7]), by depositing personal funds into his attorney trust account.

On one or more occasions between August 11, 1995, and March 31, 1997, the respondent caused funds belonging to, inter alia, himself, his law firm, and/or his individual partner(s) to be deposited or transferred into the Hudson Valley National Bank attorney trust account.

Charge 19 alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation

of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by disbursing personal funds previously deposited into his attorney trust account directly from that account to third-party creditors.

On one or more occasions between August 11, 1995, and March 31, 1997, the respondent caused or made disbursements of previously deposited funds belonging to, inter alia, himself, his law firm, and/or his individual law partner(s), from the Hudson Valley National Bank attorney trust account directly to third-party creditors.

Charge 20 alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from his attorney trust account.

On one or more occasions between August 11, 1995, and February 29, 1996, the respondent caused or made disbursements from the Hudson Valley National Bank attorney trust account for personal obligations prior to the deposit and/or clearance of the funds disbursed.

Based on the evidence adduced at the hearing, including the respondent's admissions, we find that all of the charges should have been sustained except Charge 1.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider the following: He acknowledged his mistakes and cooperated fully with the petitioner. He has no prior disciplinary history. He alleges that there is no proof of venal intent, and that his mistakes were unintentional and technical violations of the disciplinary rules. He has changed his escrow procedures. For example, he no longer delegates the handling of the escrow account to others; he logs all deposits, makes a copy of the checks and deposit slips for the file, and personally telephones the bank to have each transfer made into the account. He is well respected in the legal community, as evidenced by the testimony of his character witnesses.

The petitioner confirms that the respondent has no prior disciplinary history.

The respondent is guilty of serious professional misconduct, including conversion, conflict of interest, and misrepresentations to the Grievance Committee. Under the totality of the circumstances, his disbarment is warranted.

PRUDENTI, P.J., RITTER, SANTUCCI, ALTMAN and SMITH, JJ., concur.

Ordered that the Grievance Committee's motion to confirm in part, and disaffirm in part, the Special Referee's report is granted to the extent that Charges 2 through 20 are sustained and is denied to the extent that Charge 1 is not sustained; and it is further,

Ordered that the respondent's motion to confirm in part, and disaffirm in part, the Special Referee's report is granted to the extent that Charge 1 is not sustained and is denied to the extent that Charges 2 through 20 are sustained; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Andrew J. Natale, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Andrew J. Natale is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.